Good afternoon, Mr. Chairman, are you ready to proceed? Your Honor, please. I'm Derek Sherwood, representing the appellants, and I'd like to request three minutes to call reserve time. Thank you very much. I know there are a number of issues in this case. We are particularly interested in, at least initially, the standing and the witness issues. We recognize that there are three different classes of plaintiffs in this case. You guys are bringing in the citizen plaintiffs and the associational plaintiffs, and then the state representative as well. We recognize that there are different standards for each one of these. So if you could take us through each one of your plaintiffs and tell us why you have standing on each one, that would be very helpful to us. I'd be happy to, Your Honor, and then I assume you'd like me to address the witnesses? And then address the motives, and then if you wish to address the other matters, that's fine, too. Sure. We'll say as a preparatory matter, Your Honor, that on all the disability questions, each of them depends on a proper understanding of the claim, and at some point we're going to have to get into a discussion of what the plaintiffs actually claim. But whatever you would like to do. I'll start with standing, Your Honor. Can I ask you one question? Yes. If you could talk about what each of the plaintiffs claim, or what is their claim? I mean, nobody's claiming damages, are they? No, Your Honor. You're seeking what? We're seeking equitable relief, the declaratory and potentially injunctive relief. And could you raise your mic a little bit? Sure. It's a little bit distracting visually. Let me get you all on tape here, and we review this afterwards. All right, Your Honor. All right, well, the questions have all put out every issue in the case now. But let me start with standing and evolve that into a discussion of the claims, because I think that will be required along the way, and then we'll move into mootness and why the claims are not moot, if that makes sense to the Court. And as the Chief Judge noted, there's three classes of plaintiffs. All the plaintiffs are essentially citizens of Pennsylvania, and all of them qualify under the same heading as the first heading of the individual plaintiffs, who allege an injury to their constitutional rights under three provisions of the U.S. Constitution, the Due Profit Clause, the Equal Protection Clause, and the First Amendment. Those are individual rights in the Constitution, which individuals have a right to come to federal court and litigate, regardless of the number of other litigants who are similarly situated and incur the same injury. What's your particularized concrete injury that you're alleging on behalf of these folks? That will depend on the claim. And I'll run through each of those. Pick your best one. My best one. That way you can tie into my question. I was hoping that all questions tie together. The claim that we think most clearly requires a reversal and a remand is a due process claim. There is an agency that there are secret negotiations between the Chief Justice and the legislative leaders in Pennsylvania. That in itself gives rise to some due process questions. But the starkest issue that that raises is that, quite frankly, the plaintiffs allege simply that those were more than discussions. Those were actually instances of case fixing. Okay. Now, if you say this is all about case fixing, are your folks, parties to any case, alleged to have been fixed? Yes, Your Honor. And that was the League of Women Voters? There would be two classes of cases that are alleged to be fixed, Your Honor. One would be the League of Women Voters, which was involved in a larger class. League of Women Voters are part of a class where the litigation was then pending before the Supreme Court at the time of these negotiations. And was this raised before Chief Judge Kaine, this assertion? Yes, it was, Your Honor. This argument that there was case fixing and that it involved the League of Women Voters was argued before Chief Judge Kaine? It was raised in the pleadings and was argued. Now, I don't think the word case fixing itself was used, but the allegation was quite explicit, and I would direct the Court's attention to pages 4 to 6 of the complaint, which is at 25 to 27 in the appendix, where it's alleged very explicitly that what's at issue in the case is that the Supreme Court traded the results of cases in return for legislation, particularly dealing with money that it wanted from the legislature. But that's not the case here, obviously. No, that is the case here, Your Honor, I'm not sure. Trading the results of cases? For money, yes, Your Honor. What kind of results in which case? Would you be talking about? What are the results of the case? The cases that we believe were at issue would all involve the determinations of whether legislation that was important to the legislature was passed constitutionally. There's a pattern over the years of the legislature engaging in behavior that a number of plaintiffs, including these plaintiffs in this litigation here, have some problems with, most of which have arisen under challenges under the state constitution. That legislation was frequently challenged and winds up pending before the state Supreme Court. In some instances, the Supreme Court has actually, upon those challenges, has stricken down the legislation as unconstitutionally inactive. So these are not frivolous claims. In some instances, the litigation has not been struck down. And the allegation here is that in many of those cases in the past, and we believe some of the cases pending before the court in 2005 at the time of these negotiations, there was a yield cut, but the Supreme Court would not strike down that litigation in return for the legislature doing what the court wanted. I'm sorry. You cited to a generalized statement in the complaint. And you might just get specific with me. What paragraph in the second amendment of the complaint are you talking about? The exact allegation? Yeah. I would direct you to a couple of sentences on pages 25 to 27 of the appendix, which is four aspects of the complaint. Starting at the top of the page, if you drop down to the middle of the sentence, you get to cut through the verbiage. One or more justices of the Pennsylvania Supreme Court and leaders of the General Assembly negotiated legislation decided by the court in exchange for rulings favorable to the legislative leadership on cases pending before the court. What page are you on now? I'm on page 25 of the appendix, page 4 of the complaint. All right. Justices and leaders of the Assembly negotiated legislation in exchange for rulings. Dropping down about halfway down the page, justices of the highest court of the state bartered their vote signed cases, continuing after the dashes, in exchange for state funding desired by the justices. Jumping over two pages to page 6, page 27 of the appendix. Do you have any examples of any of that? I mean, that's about the big edge of the law in terms of an accusation you can make against somebody. And that's why we're here. I notice you're furrowing your brow with the assertion, and I can understand that. Two things, Your Honor. Of course, the allegations at this point, since we're on a 12 v. 6 motion, must be assumed to be true, and they're obviously carefully pled. But more importantly, I understand the court's skepticism, and we're not here to give testimony or present evidence, of course, but we have done some presenting of evidence, far more than is required in the course of a complaint or on a 12 v. 6 motion at this point in the litigation. I'm having a bit of a problem because I'm still trying to find the particularized concrete injury. You said you pled in your complaint that there was one amount of the case fixing. There's nothing in here that talks about any specific case, and I'm trying to find out if you ever argued to Chief Judge Kain, look, here's a case where there was a vote traded by the Supreme Court of the Commonwealth of Pennsylvania in exchange for a pay raise and that corrupted the system and it affected one of my clients. Did that ever happen in the district court? I believe it did, Your Honor. Let me explain what I think the allegations are that were fairly clearly made in this. First of all, there are allegations that are not directly at issue in this case, that there are specific named cases in reference to here that were decided a couple of years ago where the litigants who are the same litigants here had their case bartered away, in that case not returned for a salary increase but in return for funding for the judiciary that the judiciary had been seeking unsuccessfully from the legislature for about a decade. It was a huge amount of funding that went through in return for those case decisions. Those are specific cases that we allege were bartered. In the present instance, surrounding Act 44, there's two classes of cases, essentially, that we allege in the pleadings were bartered. One was that Act 44 itself, as part of the negotiations, was a subject of the barter. In other words- Yeah, I understand that, and I apologize if I'm not being clear. I'm trying to find out, and I think you've answered my question, that you tell me you did point out to Chief Judge Cain specific instances, that is, a case by name, where you're saying there was a vote trading by the Supreme Court that corrupted the process and it directly affected your client. Not generalized statements of bad things happening. Yes, sir. Then my question to you after that is, if that's the case, that there was an actual case or controversy where somebody was affected by that, how is this a proper attack on a specific case? In other words, if you had a case decision by the Supreme Court of Pennsylvania that was allegedly corrupted, how is this not a Rooker-Feldman problem for us to be looking at a constitutional claim that goes at that case from the side? Yes, Your Honor, and that's an important question. And so obviously why we have not specifically made it part of this litigation an attack on the 1999 cases. That would present a Rooker-Feldman problem. What we have here is that Act 44 itself, we allege, was part of the bargain. The court would uphold it and essentially fix that litigation. So we actually don't have a Rooker-Feldman issue because we did not bring that case in state court. If we had gone to state court, we would be barred by Rooker-Feldman from launching a collateral attack in federal court. But we didn't do that, so there isn't a Rooker-Feldman problem. I don't think that that's coming across as clear. There was not state court litigation over Act 44, so there's not a Rooker-Feldman problem. The question that I think that raises for the defense men is, is there a problem at all here that we can be suing over? And I'll ask that question for you, but it's essentially a rightness question, which is, did the plaintiffs have to go into state court to sue over Act 44 in order to have standing to allege that Act 44 was corrupted and they didn't get a fair state court process? And we believe, obviously, the answer to that is no. The due process violation occurs when the court agrees that it's not going to provide fair process. At that point, essentially the equivalent of if a judge stood up and said publicly, you know what, I worked out a deal with the other litigants. I'm not going to give you a fair day in court. Don't even show up. The due process violation has occurred at that point. Here's the problem that I'm having, and I don't presume to speak for my colleagues, but if you were to say, look, here's the vote trading that happened. Sure. In case X, they did Y, and it affected this particular client, and we've got a problem with this. In the absence of doing that, how is this concern about Act 44 different from the concern that any other citizen in the state of Pennsylvania would have about the good government and the concern about corruption in state government that you're alleging? May I answer the question? I wish you would. Sure. In order to have standing on the claim that your due process rights have been violated on this, which involves essentially a set of circumstances involving litigation, you should be a litigant. Excuse me, you can what? You should be a litigant. Obviously the due process doesn't amorphously affect everybody out there, and we're not claiming that. What rights were violated were essentially two categories. Legal and voters, at least, had litigation pending before the court, which we believe was one of the bartered cases, and they, therefore, had their due process rights deprived right there on that case, and I think that's pretty clear and concrete. The second way that concrete rights would be violated is if you were somebody who was going to bring this litigation, and now you effectively can't because it's been, as in the hypothetical I just gave a moment ago, essentially announced we've fixed the case. No point coming here. The question is do you then have to go to the state court anyway and file the suit, and we would say no because the deprivation of due process occurs when the court system is corrupted and the case is fixed, which already occurred. So would these litigants, like Common Cause and Tim Potts and legal and voters, have brought this suit in state court but for the fact that there was at that point no point in bringing it because the case itself had already been bought and sold? Excuse me. Excuse me. It's about 10 minutes, please. Thank you, Your Honor. These are clearly litigants who would have brought that lawsuit, which I think we can establish for two reasons. One, they've obviously made the effort to bring this lawsuit. They have the averse interest. They have the determination to bring the suit. And they have a long, long history of bringing exactly this kind of lawsuit over exactly this kind of legislative procedure. In fact, they were the litigants in cases that we believe were fixed a decade ago. Well, what could assume we sent this back, what could Chief Judge Kain give you in the way of relief for this vote trading problem that you've described? Since 44 doesn't exist, what would the relief be that you'd ask for? Well, two things, Your Honor. First of all, whether Act 44 doesn't exist or not, its effects continue to this day. So there are aspects of Act 44 to continue to cost money. Can you be specific about that? Sorry, Your Honor? Can you be specific? For example, is there a way to force the return of funds that were already disbursed under the Act? We believe that you can force the return of funds, but you don't even have to because funds are continuing to be paid out under Act 44 in two ways. And I'm glad that our claim obviously doesn't go just to money because it constitutes a violation. But specifically, wouldn't we have to then invalidate the Stilt decision, which is a state Supreme Court decision? They're saying under Stilt that they didn't have to return judicial salaries to their pre-Act levels, pre-Act 44 levels. That's correct, Your Honor. The allegations in this case call into question the propriety of the Stilt decision, but you don't even need to reach that. The fact of the matter is the legislative defendants here as well have received money and are continuing to receive money. Act 44 payments were made after several months prior to Act 44. What payments were made? Yes, they're called unvouchered expenses, but they're treated by the IRS and by the state itself as salary payments. Those payments were made over a series of months with time of enactment until the alleged repeal of Act 44. And not only were those monies paid out, but one necessary result of that is it leads to a higher salary calculation for every one of the defendants for the money they took during that period so that their pensions go up. And as a result of Act 44, even if it's repealed, they will have higher pensions thanks to the three months Act 44 was in effect for the rest of their lives and will be paying for it for the rest of our lives. Is that something different than a generalized complaint by a taxpayer that, hey, the taxpayers are going to be stuck? All taxpayers are going to be stuck because of this. Yes, it is, John. Distinguish that from a dime of Chrysler v. Kinella. Because it's a, you don't get in on a generalized complaint. The question about the salary payments did not go to what is our, what are we complaining about and what is our injury, but is there any continuing effect of Act 44. And Act 44 may have been repealed in May, but its effects continue on to this day. But we do not claim that we're here because of the monetary effects of Act 44. In fact, some of the plaintiffs are all for a salary increase for the state officials. And that's not what they're challenging. What they're challenging is the invasion of the constitutional rights, which in most cases has nothing to do with whether Act 44 is still valid today or, in fact, ever was valid today. The legislative process claims, which claim that the legislature totally excluded 90 percent of the legislature and the public from any meaningful participation in the legislative process, would be relevant claims even if Act 44 had failed to pass. For instance, they couldn't have barred the door to the legislature and kept half the members out and then purported to pass Act 44 except that it failed on the floor today. Let me go back to the expenses, the unvouchered expenses. Does the complaint, my understanding is the complaint does not seek damages, is that correct? That's correct, Your Honor. Does it specifically seek reimbursement of the unvouchered expenses? I believe that the relief has been plugged to allow for that, but the plaintiff's primary interest is in the declaratory injunctive relief to stop this process, which we realize has been going on for a long time and continues to this very day. I thought your opponent said that it did not, and I'm just asking you whether it… Well, we plug the relief fairly broadly. If my inquiry is regressibility, that is, assuming you're right, are we able to give you the kind of relief that you seek, then I'm trying to find out what relief you're seeking. Yes, the relief that we seek, Your Honor, is essentially declaratory relief that the behavior that we have cited is unconstitutional. We believe that that's adequate because hopefully that won't happen again. Well, then, when you say it won't happen again, how does that fix what you allege to be the continuing effect of Act 44? Assume it went back to Chief Judge Kaine and she said to the legislature and to the Commonwealth of Pennsylvania Supreme Court, you better never do that again, I'm telling you. How does that fix the problem you've identified as the continuing effect? To be accurate, Your Honor, I would not say that that's what I've said is the continuing effect. That is a continuing effect of Act 44, and that's related to the question that Judge Amber raised about the continuing monetary effects of Act 44, and it comes up in the context of is Act 44 still in place or not. I'm confused then because I understood you to say that the continuing effects of Act 44 manifest in things like higher pensions for legislators  and what I'm trying to find out, and I think the Chief Judge's question is going to, is how does a declaration and an injunction that this is not to happen in the future do anything to affect that problem that you've identified as a continuing effect of 43? How does it affect what happened in the past? How do you get regress for that? What I think we need to do, Your Honor, is separate the issues of the money, which really is not our concern, even though that is one of the injuries from the constitutional violations, which themselves are injuries. The legislative process violations occurred, and we're not really seeking money regress from that. The particular relief that was unconstitutional is, in fact, sufficient relief in a civil rights case, and if that were all we were asking for, that would be sufficient for the claims to be viable because this court could determine that, yes, in fact, that action was unconstitutional. I mean, this is clearly true on First Amendment claims where even if the behavior is purportedly stopped, you can still bring a claim for violation of your First Amendment rights because once violated, they're violated. The Equal Protection Clause, we allege that the behavior is continuing today. In fact, they have used the same procedure to, we would say, unconstitutionally enact legislation during the pendency of this appeal, so it's clearly ongoing activity. What procedure have they used? The procedure used is essentially a misuse of an ancient procedure that I think everybody here is familiar with, which is the conference committee. Conference committees were set up originally in the first parliament of Westminster to resolve disputes between two chambers. They get to resolve that dispute by sending a conference report to both chambers to vote on up or down. There's a reason why it evolved that way, and this has been true in every English-speaking jurisdiction in the world for almost a millennium, and it's because there's a limit on the conference committee. The conference committee can limit what the houses do in its report because the conference committee is limited to what the houses did originally. Do you want a declaration that the procedure of using conference committees is somehow unconstitutional? No, the procedure of using conference committees is constitutional and specified in the state constitution. What they did is change the way conference committees have been done for a thousand years in a way that violates the Equal Protection Clause. If you go and you have, let's say there is a protocol in the legislature, and that protocol has been violated, isn't your forum to seek redress before a state court? Why would you want a federal court to come in to tell a state legislature that somebody violated the protocols they have for doing business? If the protocol violated simply state rules, which this also did, then the proper forum for that would be a state court. We are alleging that it violates equal protection because it sets up two classes of legislators in a way that deprives voters of equal representation in the legislature, and therefore violates equal protection. The analogy I would suggest, Your Honors, is the way that the ancient Roman Senate operated, which is completely different from any legislature in this country, and that's why this is different from the fact that in some legislatures some are more powerful than others. This is not a matter of some people get their way more than others. This is a class structure, like in the ancient Senate, where there were several types of legislators within the same chamber. They were the senators who got to draft the legislation, write the amendments, debate it, do essentially everything until the final vote, and then to some extent they get that right by virtue of the protocols or internal operating procedures that they had in place. Why is it that a federal court should come in and say, you applied those to some but not to others? What are the federal courts within what a federal court can do by way of action? Because it violates equal protection, Your Honor. Take the hypothetical. Let's say that they adopted a rule to make it the most extreme case of why a court would not get involved. Let's say they adopted a rule that said six people get to draft all the other legislation. The other 247 of you never got to draft that rule. But equal protection is that citizens are entitled to equal protection of the laws. These are internal operating procedures of a state legislature. Yes, Your Honor, and the Equal Protection Clause creates a fundamental right under U.S. Supreme Court jurisprudence to vote equally in state elections. That has been interpreted to mean that you're entitled not just to vote on equal terms, but to have equal representation within the legislature. The only question is, what exactly does equal representation mean? And our submission is that where you construct a system that divides legislators within the chamber into those who get to actually write the legislation and those who do not get to write a single word of it, and that is enforced, that that creates a two-class legislature that violates equal protection because it denies equal participation in the legislative process, which denies equal right to vote, which denies equal protection. I would like you to spend, let's put on five more minutes, please. I'd like you to address the mootness issue, please. We have a repeal, two repeals of Act 44, and tell us why they did not vote out the issues here. Sure, Your Honor. In a lot of ways, Act 44 is like Rasputin in that it seems to die and then come back, which says something about the mootness argument. It appeared to have in the Supreme Court decision, but then a subsequent act was passed after that. So tell us why the two of those didn't put the silver stake in the heart. Sure. Or enough poison in Rasputin's defense. No, and then they had to finally throw him in the lake, and then they still have to do that here. Because they actually, they may have taken Act 44's name away. There's a number of reasons. This is unfortunately a lengthy argument, but for starters, the latest purported repeal in Act 30, it basically says, let's take Act 44 the way it is today and keep it. Everything in it. We keep everything in Act 44 and give them an extra dollar, and then let's repeal Act 44. Now, if that was sufficient to moot out legislation, legislatures could moot out every single court case ever brought against legislation. Well, why, assume for the sake of discussion that they didn't do the back room wheelin' dealin' midnight deal stuff that is deeply offensive to your clients and may well be deeply offensive to many other Pennsylvanians. Sure. But that's not part of Act 30. It's legislation that went through the system the way legislation ought to, and they did what they did in it and gave the judges another dollar, and that was done. Why is that not something that, since it would, by my hypothetical, accord with everything you think ought to happen, make your complaints about Act 44 moot? Well, I'll tell you why you might. There's a sort of seesaw that goes through this entire argument today that I think shows what the problem is. The question is, are we talking about constitutional violations or are we talking about their salaries? We do not believe that the financial effects of Act 44 have gone away at all, but even if they had, we're not complaining about the fact that they're getting these salaries. We're complaining about the fact that there was a wheelin' deal. I'm sorry. I didn't mean to imply that it was about the money at this point. My question is, if you got a result through a fair process that took you to a specific point and which made Act 44 a thing of the past, repealed it, what's left to complain about if you got a fair process covering the very same ground? Several things, Your Honor, and I'm glad you asked that because that is the nub of the complaint. We are complaining that cases other than involving Act 44 may have been fixed, that we believe they were fixed, and that some of the plaintiffs, at least, were litigants in that. They have been denied due process, and whether Act 44 is there or goes away, if their case was fixed, their case was fixed. That's a due process. That's not a generalized grievance in your view. No, because they were litigants in those cases. And how would that be regressed? See, I think I've got to agree with you. We are doing a little seesaw here. We're back now to the question of redressability. Yes, Your Honor. If you identified a specific case where somebody was the victim of the corrupted system in a vote-trading circumstance, how would giving a declaration in this case, in effect, don't do that again, do anything to repair that damage, which you claim to be a due process violation? Well, Your Honor, the declaration isn't just, don't do this again, which would be injunctive, of course. It's also, and this may seem like a small thing, but for those of us who do civil rights litigation, it's why we're here. We don't think this is small at all. This is a very important set of issues. A declaration that the government has acted unconstitutionally, and I'm not even talking about your prospective relief saying don't do that again. A simple declaration that this was unconstitutional is, in fact, legal relief that is adequate for legal purposes for the plaintiff. And I think at that point the question becomes, well, is that satisfying for the plaintiff? Are they getting anything out of it? It doesn't change anybody's position. I mean, isn't that what redressability is about, that you actually do something that alters the position of parties relative to the circumstances they were in before? Other than a psychic benefit, which I don't discount as being irrelevant, but other than that, what would a declaration do to fix the problems that anybody had suffered as a result of specific vote buying? Several things, Your Honor. I'll go from the simple to the complex. The simple is that under any First Amendment litigation, a declaration that your rights have been violated is a lot of times all you get, and that is sufficient because the time has moved on. On legislative process violations involving the Equal Protection Clause, we allege that those violations are continuing. They are continuing to do the same thing with other legislation they have in the past as part of an ongoing scheme. A declaration that that's unconstitutional is clearly helpful for plaintiffs who have spent years trying to stop procedures like that. So it is the prospective relief part. If you could, Your Honor. I'm sorry. Go ahead. We would be happy with a declaration that it's unconstitutional because we do think that provides prospective relief, but that would keep the government from functioning like this unless they want to argue that they're going to defy a federal court ruling on that. And as for the due process claims, which are the most complex in terms of relief, one could hypothecate, and this is certainly not my plan, but one could go to the state court and reopen litigation and say, hey, look, there's obviously a constitutional problem here that has not been raised or litigated before. We'd like to take another look at this. So it is possible, in fact, that there could be relief even in cases that have been decided without launching a collateral federal attack directly on them. So there is further relief even in decided cases. Beyond that, the Act 44, to the extent that it's been decided, was decided, we argue, as part of a fix so that that decision itself is essentially not valid. And that would then make the decision on Act 44's validity ab initio. To what extent are you asking us to decide an abstract issue? I'm sorry, Your Honor? To what extent are you asking us to decide an abstract issue of constitutional law? Not at all, Your Honor. The relief we're starting to speculate here may be a little bit down the road some, but the issues themselves are quite concrete. We are saying that they did specific things. And we're pretty concrete in what we say we did, which is why these are serious allegations. If we said, okay, we agree that you've alleged they've done specific things, we're going to assume that those specific things have actually been done, therefore there's a violation of some aspect of the Constitution. Sure, Your Honor. So what remedy do you get for that? You can't go back to pre-Act 44 unless still, because it would seem that if you try to rule still, that is Rockefeller. You can't appeal a state court decision to a federal court. That's correct, Your Honor. But, you know, these federal issues were actually not raised in still. So if Act 44 is invalidated on equal protection grounds, that was never argued in still. That was decided in still. So Act 44 could be invalidated ob initio, which it was not. But shouldn't you have fled in still, then, all the points you're bringing up now? With all respect, Your Honor, none of us were in still. The question I would suppose would be, should we have gone to court with still? And that comes back to the Rockefeller issue. If we had done that, we couldn't be here. We couldn't get to address the federal issues in a court that we felt had not been relevant. But I've taken us off the track. Back to the question, Your Honor. If the allegations we assume are true, and if we deem them to be a constitutional violation, what remedy do you get? Again, Your Honor, we would get, I believe, several remedies. We would get a minimum declaratory relief on all claims. And that may not be much clarity. Declaratory relief, what does that mean? A declaration that the conduct that has been alleged, and hopefully proven at trial, is unconstitutional and cannot properly be done by the state government. And just assume that's the case for the moment. What relief do you get from that? I would presume that the state government doesn't do it any longer. Secondly... Well, they're already not going to do it anymore as a result of that clarity. Other than what's already been given by way of the increase. Your point is, can we roll back that increase? Yes, I believe you can, actually. Act 30 is, and this is highly technical, and it's not the main thing we're seeking, but Act 30, what it says is, the law in effect today, we're going to have it in effect tomorrow, plus a dollar. If Act 44 were invalid ab initio, on the date that Act 30 was enacted, then the salary increase currently received by all judges would be a dollar, not roughly $40,000 and $1. So, if Act 44 is invalidated, it does have an effect on the salaries as set by Act 30, because Act 30 is dependent on the existence of Act 40 on the date of Act 30's enactment. If Act 44 isn't there on the date of Act 30's enactment, there's $40,000 less in the salary increase for every single judge. So the question of Act 44's validity ab initio is still relevant under Act 30. And since the legitimacy of Act 44 under the U.S. Constitution has never been raised or litigated in state court, there is not a collateral attack problem there. It's complicated. I understand the complication, but essentially, Stiltz has said under the state constitution, that which has been given cannot be taken away. So then what you do is you come back and the legislature does a, gets around that by saying, okay, we'll give you a dollar increase, but the formula by which you calculate further increases is not going to be there any longer. That's correct. But they also said that, and we're starting from the floor that Act 44 established. And if Act 44 was void ab initio, you don't get Stiltz, you don't get Act 30. How much was the increase that was given by Act 44? I think it varied by various classes, but it's up to 58%. It's pretty substantial. Good. I'm sure you don't want me to. No, no, you've been doing great. But I think we do have some rules here. Just a few minutes. You would not disagree with that. Not at all, Your Honor. We're on four rules. We'll have you back on rebuttal. All right, thank you very much. Thank you very much, Mr. Adams. Good afternoon, Your Honors. I have a submission to the court. My name is Orla Adams, and I am appearing today on behalf of the Chief Justice of Pennsylvania, who, as of a few days ago, was no longer the Chief Justice of Pennsylvania, which may add to the mootness discussion. As you may have learned through the press, he resigned as of December the 31st of 2007. But I don't think that will affect my argument, but you're entitled to know the fact. If you read the complaint as amended in this case, the questions from the bench are very pertinent and quite sharp-edged. The complaint attacked Act 44 and how it was passed. No question about that. There's no question that Act 44 has been completely modified. Well, there evidently is a question on that point, Mr. Adams, or at least your opposing counsel says they took steps to take Act 44 out of commission, but it's, you know, like the fabled perfume, it lingers on. And that continuing lingering effect is the injury or an injury that they want regressed. Can you speak to that point, that there are these aftershocks that we have to deal with? I'd be happy to, because that is part of the mootness argument, which is my first argument. The traditional jurisprudence is when an act like 44 has been attacked and that an appeal has been taken, if during the period between the judgment of the lower court and the appellate court, the act has been scrapped in some way, withdrawn, or nullified, the case becomes moot. There is one minor exception to that doctrine, which incidentally has been spelled out very well by the chief judge here in Seneca Hall. That is, if there is evidence in the record which shows that the complaint is likely to recur, there is no such evidence in the record in this case. If there were such evidence, it should have been produced. By that you mean the exception is if there were a likelihood that the act would be reenacted. Exactly right. All right. But there should be evidence of that, not an argument in this court for the first time that it's likely to recur. And the reason for that rule, the reason for the rule on mootness as well as standing, is not just a mechanical device created by the Supreme Court of the United States. If you go all the way back to Marbury v. Madison, you'll see that Chief Justice explained very carefully why these rules are in place. We have a tripartite system of government, executive, legislative, and judiciary. If the courts can decide disputes without an actual case or controversy, the language of the Constitution, then their effect spills over into the other organs of government. So the framers of the Constitution were very careful to say, and their colleagues that wrote the Federalist Papers were careful to say, that the judiciary has to confine itself to cases and controversy where a real plaintiff exists who will be injured by the alleged improper acts. That's the language used by this court in Seneca or written by your Chief Judge. That is the language that has been used repeatedly by the Supreme Court of the United States for the last 20 or 30 years. Well, what do you make of the argument that Mr. Schneer has made that there are the League of Women Voters, for example, a real party in this case, which lost a case because of this corrupted system and vote trading by the justices for legislation favorable to them. And that's a real, particularized thing that happened to them. And it was talked about in front of Chief Judge Kaine. They pointed it out. They argued it, et cetera. What's your response to that? That's hypothetical, but let's assume for the moment I'm sorry, when you say it's hypothetical, I apologize, when you say it's hypothetical, they're saying it actually happened. And obviously, I'm not suggesting you folks need to confess that that happened. I'm not aware of it, but let's assume that it happened. They go into court and they lose the case. They then take an appeal. I don't know where they lost the case, in the Commonwealth Police Court or go up to the Commonwealth Court, et cetera. They then go up to the Supreme Court of the United States. My colleague can see that. That's what we're filled with. What he's trying to do is to eliminate the appellate procedure of the federal courts. This court, as much as I love it, and I'm very affectionate for it, can't review intermediate decisions of state courts. That's a procedure that's relegated to the Supreme Court of the United States. If you don't like what the Supreme Court of Pennsylvania does, if you don't come to this court, you have to go up to the Supreme Court of the United States. So that if the hypothetical or actuality, however you want to look at the League of Women Voters situation, occurs, they would have to go, assuming the Supreme Court decided against them, up to the Supreme Court of the United States to rectify the problem. That is what we're filled with. And he's trying to permeate that. You're not permitted to do that. Excuse me. Put on 15 minutes. All right. Yes, no, no, we're just adding some more time. I would suggest that he has not answered your question on mootness. The law is clear. And this court and the Supreme Court have said repeatedly, if, after the lower court has decided the case, an action has taken place which eliminates the vice, the case is moot. And the lower court can only do one thing. They can dismiss for lack of jurisdiction. But that ties in with standing. He argues that this isn't Rooker-Feldman in this instance because, if I understood it correctly, they're complaining about Act 44 specifically and not the cases that were vote fixed. They're looking for relief with respect to Act 44 and with respect to that act. The constitutional claims made here were never made in the state courts, not in Stoke or any place else. And, therefore, nothing should prevent this court from addressing those constitutional claims. What's your response to that? Well, there is nothing to prevent this court from addressing the constitutional claims if he can get over the mootness hurdle and the standing hurdle. But I haven't heard his answers to your questions that will enable the court to avoid mootness or standing. Now, we haven't talked about standing, but it's pretty clear that if you read Valley Forge, Christian Academy of Valley Forge, if you read Daimler-Chrysler and the other standing cases in our brief, there's no standing. These are not concrete complaints. They're more philosophical discussions between my distinguished colleague, for whom I have great affection, as you may know, and the court. But that's not what the business of the court is about. Your job, you know it better than I do, is to decide discrete disputes. You don't have a discrete dispute any longer because the act in question which they attack, not only the act, but the way it was passed, is no longer in existence. So they are engaging in a very important debate, perhaps, but not for this court. Does E.P.A. versus... or Massachusetts versus E.P.A. have any impact on the standing analysis that this court should make? They went to the trouble of submitting a 28-J letter and saying, hey, the Supreme Court just last year has changed the ground for standing analysis with the Massachusetts versus E.P.A. case. May I answer that? Yep. My reading of E.P.A., Massachusetts versus E.P.A., is as follows. Standing is still a major concern of the Supreme Court and the federal courts. There are exceptions, perhaps, to standing, but rather interpretations. In E.P.A., the statute in question, which dealt with noxious gases, specifically provided that the states would have an opportunity to engage in the procedure employed by E.P.A. to bring about the protocol that they didn't like it to object. Number one. Number two, in E.P.A., you have the sovereign as the plaintiff, the Commonwealth of Massachusetts. Number three, there was an impact on the property of the Commonwealth of Massachusetts. The court went out of its way to explain how the coast of Massachusetts was being eroded. So you have those three factors which distinguish Massachusetts versus E.P.A. from Valley Forge or Daigler-Chrysler or any of the other standing cases. Now, I hope I've answered the question. You have, thank you. And I don't want to take up any more of the time of the court because my time was limited to six minutes to talk about mootness and standing. My distinguished colleague is going to talk about some of the things that my opponent has talked about, which I think are much more philosophical and sound like a political science discussion rather than a legal discussion under the doctrine of case and contract. Thank you very much. Thank you. Any other questions? Thank you very much. Thank you. Mr. John Krull, Your Honors. I'm representing the President Pro Tempore of the Pennsylvania Senate and the Senate Majority Leader and I will also speak with the concurrence of my colleagues on behalf of some of the other parties. Also, on the issue of immunity, certain of the legislative parties and the governor plead that these were not reached by the district courts. Correct, but it's an alternative basis for dismissal as to those defendants. I submit it's pretty clear that legislative immunity attaches to the activities that are complained of here. The governor, for one thing, is an integral part of the legislative process. The presentment requirement in the Pennsylvania Constitution, which requires him to sign bills, is a matter of high legislative discretion for the governor, for any governor. And, of course, the process of enactment is also squarely within the scope of legislative immunity. The U.S. Supreme Court has long recognized a federal common law doctrine of legislative immunity and I think it presents an alternative basis for affirmance of Judge Kaine here. I would like to say something about Act 30 of 2007 because Mr. Schmerer's argument implies that Act 30 of 2007 somehow is tainted by Act 44 of 2005. But there's no such taint doctrine in constitutional law. Each act, each enactment of a legislative body is presumed to be constitutional and presumed to be a fresh policy decision. What they're saying is that if there was a corrupt backroom deal, there should be some type of declaration that there was a constitutional violation and that's in some way, shape, or form, I'm not quite sure what it would be, that there would be a remedy. I keep thinking that likely the remedy they really want is the rollback of the Act 44 increase, which I think the Pennsylvania Supreme Court has already said you cannot do under the Pennsylvania Constitution. That's correct. My clients, by the way, took the opposite point of view before the Pennsylvania Supreme Court. We fought vigorously and we lost on that particular issue. However, there are very important issues here Doesn't the argument that we heard a few minutes ago from Mr. Schneer say not so much that there was a taint, although they probably argue there is, but that, tainted or not, since Act 30 is framed by its terms as taking Act 44 as the basis, that if Act 44 has to be viewed as void, the only thing that Act 30 accomplishes is to give judges a $1 raise for what they had before 44. Not that it's tainted, but that because of the way 30 was framed, it will only serve to do what's happening now if the bad things about 44 are allowed to continue to influence what's going on through Act 30. He can correct me if I'm wrong, but I sort of understood him to be saying something like that. I think that's what he's saying, but it seems to me that that's contrary to statutory construction and constitutional construction of statutes because the legislature is perfectly entitled to make a fresh decision at any time. It could do so again tomorrow to say we want judges' salaries to be X plus $2. So what you're saying is the fact that the Pennsylvania legislature chose to use the shorthand of saying Act 44's provisions plus this and did a new process for it, doesn't mean that even if Act 44 were viewed as void ab initio, that that guts Act 30, is that right? That's correct. In fact, Your Honor, to be precise, although I'm prepared to be correct, I don't believe Act 30 actually cited to Act 44 of 2005. I think it made reference to salary payable as of the effective date hereof. So it was really recognizing that whatever judges were getting as of that date, the effective date of Act 30 plus $1 would be their prospective salary. Let me ask this question again. I'm not saying this happened, but let's assume for the moment that a legislature and a Supreme Court does engage in a backroom deal in which, for certain pending cases, there is a wink and a nod that X will be done in terms of how you rule in exchange for the giving of a substantial pay increase. Again, without in any way stating that, or even implying that that's true, just assuming it. What could be done in that circumstance for redress? Well, those parties who have standing who would challenge the particular enactment could seek recousal of any judges who were involved in the deal. They could then appeal from that decision on the merits as well as on a refusal to recuse if there was such a thing. And it would go off the line. It would have to go off the line to the Pennsylvania Supreme Court and on to the United States Supreme Court. Well, they probably had three cues too, wouldn't they? Under the rule of necessity, no. And one thing one has to wonder about here is that the complaint in paragraph 2. Could you not get around the necessity by, I don't know, is there a process in Pennsylvania for, for example, retired justices coming back to decide something? Or I don't know. Well, there is a process for senior judges to be brought in by assignment from the Pennsylvania Supreme Court. Many of them serve, in fact, on the Commonwealth Court of Pennsylvania, which is where cases like these are brought in its original jurisdiction. Senior judges who are retired but are serving on a, who receive a per diem rather than a judicial emolument arguably would have no interest. And so it seems to me one way or another the process, the process can work its way out. So that would be a way around the rule of necessity that they would have to sit out? It's one way around it. And it would look, I mean, just people politically, for example, it would look very politically bad if they were to decide something that alleges that they were in on the deal and then they're supposed to rule on whether that occurred, et cetera, et cetera. So it would seem that you would have somebody else appointed, would you not? Yes. Now, I'm not aware that there is any such procedure to appoint a retired justice to the Pennsylvania Supreme Court. But it seems to me that on the intermediate appellate courts where such senior judges are already assigned, that that possibility exists. And, of course, if for whatever reason, because there weren't enough qualified justices or they were tied or whatever, the intermediate court's ruling were affirmed, that would be it. That would be the end of the matter unless it went up to the U.S. Supreme Court. So, you know, I see state processes that are available. And it seems to me that plaintiffs here are doing what we were told not to do when I was a kid, and that was make a federal case out of it. They've ignored the state processes and come to the federal courts trying to create, to fashion federal claims, which, in fact, don't exist. So that's really the core of your standing argument. Yes. It also goes to the merits and it goes to relief. For example, Mr. Schwerner gave the example of a conference committee. It seems to me that what he's arguing on an equal protection basis is that all legislators should be equal, that they should have equal influence. Well, that's not the case in Congress. Congress has conference committees any day of the week. And who's on those committees? Leaders. Leaders are on those committees. Why are they there? It's because rank-and-file members have voted for them to be leaders. Not all legislators participate in every phase of legislation. But what all legislators do participate in is the final yea or nay vote on that legislation. And in that regard, they are all equal. But there's no such doctrine of equal representation in the federal Constitution that would support the notion that Mr. Schwerner advances about the inequalities of power in a legislative process. Now, if there were, then I think much congressional legislation would be under challenge. He said in response to... Put on another ten minutes, please. Thank you. He said in response to the chief judge's invitation to submit his best claim that it was due process, secret negotiations, and case-fixing. Plaintiffs have talked about a deprivation of due process throughout this case, throughout their briefs. There's no such concept in the Constitution. The precise concept in the 14th Amendment is that no person shall be subjected to a deprivation of life, liberty, or property without due process. Plaintiffs have not demonstrated any loss of life, of course, nor of property, nor of liberty. As citizens, they enjoy all the liberties that every citizen of Pennsylvania enjoys. Their taxes paid for this increase that was... And in that respect, they are as privileged or burdened as every other taxpayer in Pennsylvania. But this does not rise to a federal due process claim. Do you understand the relief that's being sought in this matter? Well, I disagree with Mr. Scherrer's characterization. All of the relief that's actually pleaded in the second amended complaint is prospective in nature. None of it seeks any giveback of monies or adjustment of pensions based on the invalidity of Act 44. What about the expenses? Is that pleaded? No. All of it is prospective, injunctive, or declaratory relief. Pages 59 and 60 of the second amended complaint in the appendix show the relief. And the very first point of relief that they see is, A, enjoying the Pennsylvania Supreme Court from citing or relying on AFL-CIO et al. versus Commonwealth et al. And Common Cause et al. versus Commonwealth et al. And any decision citing them therein has precedent in future cases. Now, Mr. Scherrer and an appellant have stated that some cases have gone against the General Assembly in the Pennsylvania Supreme Court under Article III of the Procedures for Enactment of Legislation. That's true. The General Assembly has lost some significant cases that are cited in the briefs. They cite those cases that we lost for the proposition that Article III is an important procedural provision in the Pennsylvania Constitution that has vitality, and we agree with that. But then they cite the cases that they lost and say the fix was in. It was in. Either it was in or it wasn't. Well, you really don't want us to get into fact-finding. No, of course, that's not this court's responsibility, but there is an inconsistency in their position. They mentioned secret negotiations. Well, what they call secret negotiations seems to be a meeting to which they were not invited. But the point is we're under what, Rule 12? Yes.  Let's assume that secret negotiations took place. I mean, I think we have to accept that for purposes of this. Yes. I'm sorry, there is no anti-secret negotiation clause in the United States Constitution. Meetings occur behind closed doors all the time in every branch of government, in all three branches of government, and in both state and federal governments. But their allegations go further than that by saying there was a both trading deal cut that goes against the core of what judges are all about. Actually, precisely what they allege is on page 11 of their Second Amended Complaint, paragraph 2A, based on information and belief, I'm quoting, a negotiated deal, settlement, or understanding begun in 1999 between one or more justices of the Pennsylvania Supreme Court and certain leaders, whichever ever you are, 2A of the Second Amended Complaint. So are you challenging the assertion made by Mr. Schneer that, in fact, it was specifically argued to Chief Judge Kaine that there were identified cases in which there was a traded vote in a corruption of the system? I am not aware of any specific allegations. Certainly there are none in the complaint, and I was at the argument with Judge Kaine. I haven't reviewed the transcript of that argument, Your Honor, but I just don't recall any specific allegations. What I do see here before me in the complaint is an allegation that one or more justices and certain unnamed leaders had discussions that led to an understanding or a settlement or a deal. Well, did that somehow taint legislation? I don't think so, because the motives of individual legislators in voting for or against legislation is not something the federal courts ever look at. For that matter, the state courts don't look at it either when judging the constitutionality of legislation. With respect to whether that one or more justices who were involved in those discussions should have participated in litigation involving those discussions, well, again, that's an issue for recusal or appeal. Anyone who understands the legislative process more often knows that when you have 253 members, as you do in the Pennsylvania General Assembly, you can't bind the General Assembly as an institution to a deal. It's not like two corporations that can make a contractual agreement and then they are bound even after their personnel change. The General Assembly, its existence is renewed every two years. The membership changes. The leadership changes. In fact, it has changed. And therefore, it's preposterous that there could be a deal that would bind the General Assembly. In fact, part of the change was if not as a result of the fallout from this controversy. Very much so. Very much so. There's also been change in personnel of the Pennsylvania Supreme Court since 1999. In fact, this year we will have three out of seven justices on that court who are brand new to the court. And what they are seeking in relief to bar the Pennsylvania Supreme Court from citing its own precedent when one thinks about it, requiring Judge Kaine to say to those new justices as well as the old justices, I'm sorry, you cannot cite the old Common Cause case or the AFL-CIO case. I forbid you to do it. Well, one of the new justices may very well say, you know, I've read that decision, and regardless of how it was, what the internal process was that it was arrived at, I find the reasoning that's within the four corners of the decision to be cogent. I wish to rely on it. Can a federal court say, no, you may not rely on reasoning that you find cogent? It seems to me that that's beyond the power of the federal court. Again, they seek prospective relief, declaratory judgments that are all prospective, and they seek to permanently enjoin the legislature for enacting any legislation in violation of Article III of the Pennsylvania Constitution. That's on page 60. It's part of their prayer for relief. In the ideal world, if they could get it, what they would like to do is undo the bad things they think were done by Act 44. Well, except they have not included that in their prayer for relief, Judge Amberwood. They're not seeking a reduction in the calculation of the basis for pensions. They're not seeking to give back the increase that was actually paid. And in fact, they have problems where they've tried to do that. I think that they might have to plead in each individual judge and legislator. There would be a host of problems. Recognizing those problems, I can understand why they didn't. But that means that they're only seeking prospective relief. And the kind of relief that they're getting is not only impractical for a federal court to administer, I think it's also beyond the power of the federal court, because it basically would involve restructuring and superintending the Commonwealth as a sovereign, and superintending at least two of its co-equal branches. Other things that they've complained of similarly, and I guess they've come back to, so if that's the case, then what can they do? I mean, you have a lot of groups here who are interested in nothing less than, or nothing more than just good government. That's what they want. If the allegation is correct that there was something untoward done in terms of the deal cut, how do you assure them of good government with respect to what happened here? Well, as you pointed out, there was quite a change in the personnel at the General Assembly, in fact, as a result of Act 44. However, the General Assembly, even before the general election of 2006, repealed Act 44. That didn't stop the voters from changing a substantial number of members in the legislature. Good government, I think, starts with the voters. Abraham Lincoln said, without a virtuous citizenry, democracy cannot survive. So that's where you must start. Now, one thing one can also do is look to procedural reforms within those bodies. And again, that's a matter of self-government for the Commonwealth of Pennsylvania, not a federal issue. It's a political issue. But it is taking place, you know. There are other things they've complained of. They've complained of a First Amendment violation, which, it seems to me, consists of a complaint that they were not given the opportunity for political speech in a timely fashion to protest Act 44. Good. We understand that there are some other issues, but I'm going to enforce the red line rule at this time. Thank you very much. The briefs on both sides handled these matters very forcefully and thoroughly, and we will take your arguments under advisement. Thank you. Go ahead, Mr. Schneider. Unfortunately, Your Honor, I could probably take another 45 minutes discussing this. I'll try to handle anything that comes up in the meeting. Could I just start with Mr. Krugman? We left off. If something bad happened, as you allege, Yes, Your Honor. and there, by all accounts, has been a significant political fallout, which is likely to be remembered, at least for a generation or two, isn't that the best antidote for bad government? I don't know if it's the best antidote, Your Honor, but it certainly is one of them. But I would take issue with several elements of that statement. First of all, we live in a republic, not just a direct democracy, and we have a court system specifically so constitutional rights can be upheld and vindicated, and that is always a parallel track to the electorate. Secondly, during the course of all the years that we've cited the briefs, where both the legislative process we complain of and the case-fixing has been going on, aren't you being unduly modest? Isn't it the case that your clients and folks who support your clients' views were very successful in the political arena in drawing public attention to what they viewed as a problem in the system, and as a result of that, there was a shake-up of really dramatic proportions in the state legislature, and indeed one might argue that it reached the elections for the state Supreme Court. Whether it did or didn't, there might be a perception there that it did, and certainly it did at the legislative level. Now, if that's the case, and we do indeed live in a representative democracy, why isn't Judge Ambrose correct in saying, hey, the system worked, the antidote for the problem you identified was political statements and the political process working? Well, two things, Your Honor. The system actually didn't work, at least completely. The behavior that we complain of had been going on during this appeal, so it didn't stop because the people changed. It's not about the people. It's about the behavior you complain of. I'm talking about the legislative process, Your Honor. The use of what is essentially a two-class legislature to make sure that only six people write the words and nobody else gets to do anything but just vote up or down, that's a complaint that's continued. Yeah, address that. Your opponent, Mr. Krill, says, look, conference committees, that's the way legislatures work. You get senior people, they get into a room, they work out a final deal so that the two houses come up with something that everybody votes on. That's the way it's always worked. What's wrong with his analysis? How come that's now in this circumstance today in Pennsylvania a violation of equal protection? Do you have any case at all from any jurisdiction that says that? Let me tell you what we do have, Your Honor. Mr. Krill's statement that the way that it was done in this case is the way it's always been done is actually factually and historically incorrect, and we're not complaining about conference committees per se. If they had used conference committees the way they've been used for 700 years, there would be a problem here. I'm keying off your statement, which was it's going on today. I assume you're not alleging that today while this appeal was pending, members of the Supreme Court of the Commonwealth of Pennsylvania were meeting with legislatures and corruptly fixing cases. I assume that you meant, and correct me if I'm wrong, that they're still having conference committees where some people go in a room and they work out the final deal or details of a legislation, and then other legislators don't get to rewrite it, they get to vote it up or down. I understood that to be your point. If that's not your point, get me straight up. But if it is your point, how is that different than the way conference committees function and have historically functioned in the United States of America and in several states? I'll tell you exactly how, Your Honor, because as you stated and as Mr. Crow stated, it is accurate to a point, but not to the point where the Equal Protection Clause kicks in, and this is the key thing. The conference committee device has functioned in a certain way its entire history for 700 years, which is not how it's being done here, and it's important. It's a small point, but it's an important point. Conference committees send their conference report to both chambers and say, vote up or down because it's a good way to resolve a dispute rather than having it go back and forth between the chambers. And under the device that's evolved over these 700 years of usage in every English-speaking legislature, the reason why conference committees get to say, here's our answer, up or down, is because they're limited themselves. They don't get to come in and do what was done here and say, okay, we're here to resolve a dispute between this house and this house. What we're going to do is tear up everything, every single word, which is going to get thrown out, every single word that was debated, amended, considered by all 247 other legislators. We're going to chuck it and write our own legislation. How about if they'd only chucked 80% of it or 60% or 50%? At what point does it cease to be a conference committee and become the bad, abusive thing you've described? Two things, Your Honor. And I think that this is an obscure area of law, but the law of conference committees is clear in every authority and every jurisdiction. Conference committees are bound to accept everything that has passed both houses the same and are not allowed, and this is the most important point here, they are not allowed to insert any new material that did not appear before one or the other chamber, did not pass one or the other chamber. And there's a lot of reasons. I'm not trying to draw some sticky little line rule. There's an important reason that I'd like the court to understand. And have courts ever enforced that rule, or do legislators enforce that rule within their own bodies and say, wait a second, you can't do that because that's new material and we won't accept it, it's a point of order? I mean, is it self-regulating and not judicially regulated behavior? Yes and no. For the most part, yes, the rules are to be enforced within the chamber. When they do something that violates equal protection, it rises to something that is cognizable by a federal court. And there have been, I came off the top of my head, I think a federal court ruling, but there have been state court rulings on this aspect of law and what conference committees may do. But our contention here isn't so much that that violates the historical understanding of conference committees, which I could talk to you about for a long time. But the real point here is that by doing it, they have violated the equal protection clause. And if I may, Your Honor, I know this has gone off the wall, let me explain in a minute what the exact problem is, why this isn't just a 0% or 1% that's okay. The reason why conference committees are confined, and thereby the chambers can be confined by the conference committee, is because if that weren't the case, what you would have is what you have here. You would have essentially the entire legislative process, which in Pennsylvania is spelled out in tremendous detail in the Constitution. You would have to go through this whole process and would get to the conference committee, and under the rules, the conference committee could then rip out every single thing done, put in something new, and send it to chambers for an up or down vote. They would be the only people that effectively would ever get to write a single word of legislation. It would render the entire legislative process to that date basically a preseason game. I think we understand. That's a good point. We understand that. We'll give you five more minutes to address anything else you would like. I would ask if we could just spend at least a portion of that time on standing. Assume all that you say here. When I look at the Supreme Court cases on taxpayer standing, it's a tough, it's almost a marathon. I would say impossible, Your Honor. And we're not electing taxpayer standing. In every single case that they cite, I don't want to get into taxpayer standing. To go back to the very first question of this argument, the standing is different for each claim and for each of the litigants essentially. But it comes down to this. The due process claims, you have standing if you're a litigant whose right to a fair tribunal was invaded because you were either in court or you would have gone in court on this and had it taken away from you. Now, is that to the associational plaintiffs here or is that to the citizen plaintiffs? Well, it would start with the individual plaintiffs and the associational plaintiffs build off of that. If their membership has standing to bring those claims and all their membership in our view would, then the associational plaintiffs would have standing derivative of that. They also have standing themselves because these are clearly, the associational plaintiffs, common cause, the women voters, are clearly the plaintiffs who have sued over this in the past, wanted to sue over Act 44. They're probably exactly the people the legislature had in mind when they arranged to make sure that these cases were going to lose. These are the people who sued over it and they were going to be there. So the associational plaintiffs would have standing both in their own right because they litigated and will litigate these cases, and the standing that is derivative of all of their members who could and would have brought these suits. And again, remember that the League of Women Voters, at least among the plaintiffs, was in court with a case that we have reason to suspect was one of the tainted cases. And so they have a somewhat distinct but similar due process violation there. So there's standing as litigants if one understands that the claim here is that the court system was essentially perverted through a deal. The equal protection argument, you have standing if you live in one of the diminished districts. So not every single citizen in the state could sue. Diminished district meaning? If you live in a district where the representative was relegated to only going up or down at the end rather than ever getting to offer an amendment, then your representation... But you have a state legislator who's also a plaintiff, right? Yes, the state legislator would also be able to assert that right as a legislator. The voters have the right to assert that right because it's their representative's italian and the other representative is similarly situated who's representing them who has been... I was not able to find any cases that asserted that principle, but perhaps you had some. I'm not sure which principle you're alluding to, Your Honor. The principle that if an individual legislator doesn't sit on the conference committee, that either that legislator or his or her constituents have an equal protection claim. Sure, and the argument is not that you get to sit on the conference committee. The conference committee is essentially the locus of activity here. The problem with the plaintiff is not being excluded from conference committees or anything else like that. It is being excluded from the ability to amend legislation. I understand that. That's all partly the same thing that you're saying. Is there a case that goes your way that says that there's, in that circumstance, standing? There isn't a case that I don't believe of that addresses specifically can you amend. There are cases that deal with does legislating consist of anything more than an up or down vote at the end, and they do say that, including the cases the other side fights going against us, like the Molina case. It says that there is more to just the up or down vote in the end. Wouldn't a representative like that only have to have been barred from a vote or something like that? No. What we're asserting is that your right as a legislator and then derivatively as a constituent is not just to vote at the end like the tribunes got in the Senate. It's a right to participate in certain court functions in terms of everything else with amending being one of them. What was done here was the right to offer a single word of legislation at all is effectively eliminated for 247 members of the General Assembly. It's essentially a rule and practice that says since people write every word, you get to say thumbs up or thumbs down. Now, they get the same thumbs up or thumbs down in our system, and more importantly, what the cases clearly say is you can't create two classes of legislators over virtually anything. You can probably have executive washrooms that some can use and others are not complaining about that, but you can't take a process where you say, here's something that's very important about the legislative process. Does this affect what you're saying? You have a House bill and a Senate bill. You go in, you have to accept them, and then you cut your deal with respect to the things that have been passed by the House and the things that have been passed by the Senate. And you're saying that here there was something added that wasn't even considered by the House. In fact, the entire bill, Your Honor. Or the Senate. And so then isn't what a representative does is bring that up and then just vote no and get others to vote no? Isn't that the political process? That's part of the political process, and this is essentially the question. Do they have a right as a legislator to do anything more than just be handed the bills and vote yes or no? And we would say that, yes, they definitely do. Because for two reasons. One is it's clearly substantively an important part of the legislative process, and two related to it is you can't create two classes of legislators, one who don't get to write or amend a single word, and those who get to write it and just say everybody else has to take it or leave it. They get to take it or leave it, but they never get to write a word. Thank you, Your Honor. Not good enough. No? It's been a very good argument on all sides. Thank you very much, Your Honor. We appreciate the time and effort that counsel has expended on this. They're important issues. We'll take the case under advisement. We thank counsel, all counsel, on this matter. Thank you very much. Thank you, Your Honor. Your Honor, thank you.